IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| VILOX TECHNOLOGIES, LLC and VILOX, LLC | § § | |
|         *Plaintiffs*, | § | C.A. No. 6:22-cv-01254-FB |
| v. | § § | JURY TRIAL DEMANDED |
| ORACLE CORPORATION | § § | |
|         Defendant. | § | |

**DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

III. ARGUMENT ................................................................................................................... 3

    A. Vilox, LLC Lacks Standing And Must Be Dismissed Under Rule 12(b)(1) ............................................................................................................... 3

    B. The Court Should Dismiss The Complaint Under Rule 12(b)(6) .................... 5

        1. A Plausible Claim Requires Sufficient Factual Allegations ................. 5

        2. Neither Plaintiffs' Complaint Nor the Attached Claim Charts Satisfy the Pleading Requirement .......................................................... 6

        3. Having Failed to Plead Direct Infringement, Plaintiffs' Indirect Infringement Claims Must Also Fail ..................................................... 13

IV. CONCLUSION .............................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
  427 F.3d 971 (Fed. Cir. 2005)...................................................................................................3

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015).................................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................5

*Avus Holdings, LLC v. Iron Lab*,
  No. 6:22-CV-00134-ADA, 2022 WL 4099748 (W.D. Tex. Sept. 7, 2022) ...............................5

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
  616 F.3d 1249 (Fed. Cir. 2010)...............................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................................5

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)...............................................................................................13

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ........................................................................................6, 9, 11

*Bowmar Archery LLC v. VIP Veteran Innovative Prod. LLC*,
  No. 1:22-CV-00346-RP, 2023 WL 28438 (W.D. Tex. Jan. 3, 2023)..................................6, 13

*Chemguard Ltd. v. Dynax Corp.*,
  No. 4:09-CV-524-Y, 2010 WL 11619571 (N.D. Tex. Apr. 1, 2010) ........................................4

*EMA Electromechanics, Inc. v. Siemens Corp.*,
  No. 6:21-CV-00206-ADA, 2022 WL 2759094 (W.D. Tex. July 13, 2022)..............................3

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
  991 F.3d 370 (2d Cir. 2021), *cert. denied*, 211 L. Ed. 2d 475, 142 S. Ct. 757
  (2022).........................................................................................................................................4

*House v. Mitra QSR KNE LLC*,
  796 F. App'x 783 (4th Cir. 2019) ..............................................................................................5

*Kinetic Concepts, Inc. v. Wake Forest Uni. Health Sci.*,
  No. SA-11-CV-163-XR, 2013 WL 2453267 (W.D. Tex. June 4, 2013)...................................3

*Laitram Corp. v. Rexnord, Inc.*,
    939 F.2d 1533 (Fed. Cir. 1991)..................................................................................................6

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014)..................................................................................................................5

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019)................................................................................................3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................................3

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007)...........................................................................................4, 5

*Northpoint Tech.., Ltd. v. Directv, Inc.*,
    1-09-CV-506 JRN, 2010 WL 11444098 (W.D. Tex. Oct. 25, 2010) ........................................4

*Southwall Techs., Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995)................................................................................................11

*Vervain, LLC v. Micron Tech., Inc.*,
    No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ........................6, 12, 13

**Statutes**

35 U.S.C. § 271(a) ............................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 8...............................................................................................................................5

Fed. R. Civ. P. 12(b)(1).......................................................................................................1, 3, 5, 13

Fed. R. Civ. P. 12(b)(6)............................................................................................................1, 5, 13

Local Rule CV-5 ............................................................................................................................14

I.      INTRODUCTION

Plaintiffs Vilox Technologies, LLC and Vilox, LLC (collectively, "Plaintiffs") assert two expired patents against Defendant Oracle Corporation ("Oracle"). In doing so, Plaintiffs plainly failed to do their diligence in preparing their complaint. Not only are Plaintiffs' infringement allegations conclusory and incomplete, and therefore not plausible, but one of the Plaintiffs has no rights under the patents-in-suit and lacks Article III standing. As a result, the Court should dismiss Plaintiffs' Complaint under Rule 12(b)(1) and Rule 12(b)(6).

As for standing, the Complaint lacks any allegations that Vilox, LLC holds any exclusionary rights under either patent. Nowhere does the Complaint allege that Vilox, LLC is a patent owner, assignee, or licensee (let alone an exclusive licensee) of either patent. And public records from the United States Patent and Trademark Office show that only Vilox Technologies, LLC is an assignee of both patents. Because it lacks any exclusionary rights, Vilox, LLC cannot show that it suffered an injury in fact as is required to confer standing under the Constitution. It is also unclear whether Vilox, LLC even exists as a legal entity. No registration for Vilox, LLC as a Texas limited liability company exists in Texas state records. If it does not exist as a legal entity, it cannot have standing to assert any rights. Vilox, LLC, therefore, must be dismissed from this action under Federal Rule of Civil Procedure 12(b)(1).

The Complaint also fails to state a plausible claim for direct and indirect infringement under either patent and must be dismissed under Rule 12(b)(6). The Complaint recites only the legal conclusions that Oracle infringes "one or more" of the asserted patents' claims. While Plaintiffs attached to the Complaint claim charts purporting to map claim 1 of each patent onto the two accused Oracle products, the claim charts lack any factual content to allow the Court to reasonably infer that Oracle has infringed. Like the Complaint itself, the claim charts merely parrot the claim language. The only additional detail provided in the claim charts either ignores what the claims require or points to entirely separate products nowhere accused or mentioned in the Complaint. Plaintiffs come nowhere close to meeting their pleading obligations, and their direct infringement claims must be dismissed. Moreover, because direct infringement is an essential

element of a claim for indirect infringement, Plaintiffs' indirect infringement claims also must be dismissed.

## II.   BACKGROUND

Plaintiffs filed their Complaint on December 5, 2022, purporting to state claims for direct and indirect infringement of U.S. Patent Nos. 6,760,720 and 7,188,100. Dkt. 1 ("Compl."). Plaintiffs plead that Vilox, LLC and Vilox Technologies, LLC are two separate entities, but the Complaint refers to both entities collectively as "Vilox." Compl. ¶¶ 1, 2. According to the Complaint, "Vilox" owns both the '720 and '100 patents by assignment. Compl. ¶¶ 7, 17. Public records show that only Vilox Technologies, LLC is an assignee of each patent. Exs. 1-3.[1] Both patents claim priority to an application filed in 2000 and expired more than two years ago. Compl., Exs. A, D. Nowhere in the Complaint do Plaintiffs allege that they have ever practiced the patents or used them to compete against Oracle.

The '720 patent purportedly covers a "method and apparatus for conducting on-the-fly searches" through which a user can search a database and then access data therein without knowing the database's structure. Compl. ¶ 8. The '100 patent is a continuation-in-part of the '720 patent and purportedly covers a method and apparatus for "generating a search result" from "a search using a search-on-the-fly search engine." Id. ¶ 18. Plaintiffs allege that Oracle directly infringes "one or more of claims 1-39 of the '720 patent" and "one or more of claims 1-38 of the '100 patent" by making, using, selling and/or offering for sale, and/or importing into the United States Oracle Database and Oracle ATG. Id. ¶¶ 9, 19. Oracle Database is a database program used to organize, manage, store, and retrieve data. Oracle ATG was an ecommerce software platform that allowed users to create an online catalog.

Plaintiffs allege vaguely in the Complaint that the "Accused Instrumentalities"—for which no definition exists—"are embodied in Oracle Database products and Oracle ATG Platform products and generally relate to retrieval, search, generation of results, and truncation of displayed

---

[1] Unless otherwise noted, "Ex." refers to exhibits attached to the declaration of Diana Rutowski submitted herewith.

characters performed within Oracle Database products and Oracle ATG Platform products." *Id.* ¶¶ 10, 20. Plaintiffs attached to the Complaint four claim charts purporting to map claim 1 of each patent to the accused Oracle products. Compl., Exs. B, C, E, F. Plaintiffs also allege that Oracle indirectly infringes both patents by encouraging or instructing others to use the accused Oracle products and "related products and services." *Id.* ¶¶ 14-15, 24-25.

### III. ARGUMENT

#### A. Vilox, LLC Lacks Standing And Must Be Dismissed Under Rule 12(b)(1)

"Standing to sue is a threshold requirement in every federal action." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005). "A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." *EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-CV-00206-ADA, 2022 WL 2759094, at *10 (W.D. Tex. July 13, 2022) (quoting *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010)). As the party seeking to invoke the jurisdiction of the court, the plaintiff bears the burden of demonstrating standing. *Id.* at *3 (citing *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed. Cir. 1995)); *Sicom Sys.*, 427 F.3d at 976. Where a plaintiff lacks constitutional standing, it must be dismissed under Rule 12(b)(1). *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234-35 (Fed. Cir. 2019); *Kinetic Concepts, Inc. v. Wake Forest Uni. Health Sci.*, No. SA-11-CV-163-XR, 2013 WL 2453267, at *1 (W.D. Tex. June 4, 2013).

To establish constitutional standing, a plaintiff must show, *inter alia*, an "injury in fact"— *i.e.*, "an invasion of a legally protected interest which is … concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In the patent infringement context, the Federal Circuit has explained that "those who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed." *Lone Star*, 925 F.3d at 1234 (quoting *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010)). In contrast, a plaintiff "who lacks exclusionary rights has no authority to assert a patent (even along with the patentee)." *Id.* at 1228. As the Federal Circuit has explained, parties who "lack exclusionary rights under the patent statutes … are not injured by a party that makes, uses, or sells the patented invention because they

do not hold the necessary exclusionary rights. Plaintiffs in this category lack constitutional standing." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340-41 (Fed. Cir. 2007). And "[t]his standing deficiency cannot be cured by adding the patent title owner to the suit." *Id.* at 1341.

Vilox, LLC lacks any exclusionary rights under the asserted patents here. Nowhere in the Complaint do Plaintiffs plead any patent ownership interest by Vilox, LLC. Instead, the Complaint broadly defines "Vilox" as capturing both plaintiffs, and alleges that "Vilox" owns the '100 and '720 patents by assignment. Compl. ¶¶ 7, 14. But according to the U.S. Patent and Trademark Office public records, only Vilox Technologies, LLC is an assignee of the patents. *See* Exs. 1-3. There is no recorded assignment to Vilox, LLC. *Id.* Nor does the Complaint plead that Vilox is a licensee of the patents. *See generally* Compl. Simply put, Vilox, LLC has no rights under the '720 and '100 patents and thus lacks standing to assert any claims of infringement thereof.

Moreover, it is unclear whether Vilox, LLC even exists as a legal entity. Despite Plaintiffs' allegation in the Complaint that Vilox, LLC "is a Texas Limited Liability Company with its principal place of business located in Austin, Texas" (Compl. ¶ 2), Vilox, LLC does not appear to be registered in Texas. Ex. 4. An entity that does not legally exist cannot have standing. *See Chemguard Ltd. v. Dynax Corp.*, No. 4:09-CV-524-Y, 2010 WL 11619571, at *2 (N.D. Tex. Apr. 1, 2010) ("As for business entities, civil suits may be maintained only by or against parties having an actual or legal existence." (internal quotation marks omitted)); *see also Northpoint Tech.., Ltd. v. Directv, Inc.*, 1-09-CV-506 JRN, 2010 WL 11444098, at *2 (W.D. Tex. Oct. 25, 2010) ("[L]egal existence [is a] prerequisite to a party's ability to bring and maintain a lawsuit."); *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 384 (2d Cir. 2021), *cert. denied*, 211 L. Ed. 2d 475, 142 S. Ct. 757 (2022) ("[W]ithout legal existence, the [entity] lacked standing to sue."). This makes sense because "standing requires, among other things, that the party bringing an action have a personal stake in the outcome of the case. If it does not legally exist, [an entity] can hold no stake in the outcome of this or any case." *Northpoint Tech.*, 2010 WL 11444098, at *2 (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Vilox, LLC, as an entity lacking legal existence, "personally stands to gain or lose nothing from the suit, no matter how it is resolved, [and thus]

4

cannot avail [it]self of the jurisdiction of the federal courts." *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 787-88 (4th Cir. 2019).

In sum, Vilox, LLC must be dismissed under Rule 12(b)(1). And because any amendment would be futile—given that Vilox, LLC cannot allege that it is an owner, assignee, or exclusive licensee of the asserted patents, as is required to confer standing (*see, e.g., Morrow*, 499 F.3d at 1340)—the dismissal should be with prejudice.

### B. The Court Should Dismiss The Complaint Under Rule 12(b)(6)

#### 1. A Plausible Claim Requires Sufficient Factual Allegations

Plaintiffs fail to plead direct and indirect infringement in compliance with Rule 8 of the Federal Rules of Civil Procedure and Supreme Court precedent. A court should dismiss claims challenged under Rule 12(b)(6) when the pleading does not contain enough factual allegations to state "plausible" claims for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plausible" claim requires more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A claim for direct patent infringement arises where a defendant, without authority, makes, uses, offers to sell, sells, or imports any patented invention within the United States during the term of the patent. 35 U.S.C. § 271(a). Direct infringement of a method claim occurs only "where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (internal citations omitted); *see also Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("A method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all the steps are carried out."). "Thus, to sufficiently state a claim of direct infringement, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim(s)." *Avus Holdings, LLC v. Iron Lab*, No. 6:22-CV-00134-ADA, 2022 WL

4099748, at *3 (W.D. Tex. Sept. 7, 2022) (internal quotation marks omitted); *Bowmar Archery LLC v. VIP Veteran Innovative Prod. LLC*, No. 1:22-CV-00346-RP, 2023 WL 28438, at *2 (W.D. Tex. Jan. 3, 2023) (same). This requirement is based on the principle that "the failure to meet a single limitation is sufficient to negate infringement of [a] claim." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

Courts in this District have made clear that, "[u]nder any standard, the complaint must support its entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation." *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *2 (W.D. Tex. Jan. 3, 2022) (citing *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021)); *Bowmar Archery*, 2023 WL 28438, at *2 (same). As the Federal Circuit has explained, "it is the *quality* of the allegations, not the *quantity*, that matters." *Bot M8*, F.4th at 1354. And simply attaching claim charts to a complaint does not render an infringement claim sufficiently pleaded. *Vervain*, 2022 WL 23469, at *7.

### 2. Neither Plaintiffs' Complaint Nor the Attached Claim Charts Satisfy the Pleading Requirement

The Court should dismiss Plaintiffs' claims for direct and indirect infringement. Even accepting all of Plaintiffs' factual allegations as true, the claims fall far short of meeting the pleading requirements. For each patent, Plaintiffs' direct infringement allegations span only two paragraphs in the Complaint. Compl. ¶¶ 9-10, 19-20. Plaintiffs then attached to the Complaint claim charts purporting to map claim 1 of each patent onto each accused product. But neither the Complaint nor the claim charts provide factual content plausibly pleading a claim of direct infringement for the reasons detailed below. And because Plaintiffs fail to plead direct infringement, their indirect infringement allegations must also be dismissed.

The Complaint itself cannot satisfy the pleading standard because it recites only conclusory allegations. For each patent, Plaintiffs first allege that Oracle "makes, uses, sells and/or offers for sale within this District and elsewhere in the United States and/or imports into this District and elsewhere in the United States, products or services that, among other features, includes [the

6

features recited in the claim language], that infringes one or more of [the]claims … literally or under the doctrine of equivalents." Compl. ¶¶ 9, 19. These paragraphs contain no factual content relevant to Oracle's products and instead simply recite a laundry list of claim elements and the legal conclusion that Oracle infringes. In the second (and final) paragraph for each patent, Plaintiffs allege that the "Accused Instrumentalities are embodied in Oracle Database products and Oracle ATG Platform products and generally relate to retrieval, search, generation of results, and truncation of displayed characters performed within Oracle Database products and Oracle ATG Platform products." Compl. ¶¶ 10, 20. Again, these paragraphs wholly lack any factual content. Plaintiffs do not define the "Accused Instrumentalities" or explain how these unidentified instrumentalities perform each claim limitation. And even assuming Plaintiffs had identified specific instrumentalities and accepting those allegations as true, an allegation that the instrumentalities "generally relate" to searching and retrieving data and generating results does not come close to satisfying Plaintiffs' pleading requirements.

### a. '720 Patent

Plaintiffs' claim charts are no help. Plaintiffs attempted to map one claim of each patent (claim 1) to the accused products. Compl. Exs. B, C, E, F. Claim 1 of the '720 patent recites:

> 1. A method implemented on a computer for searching databases, comprising:
>
>   [a] determining a database schema for a database, wherein the database includes database fields;
>
>   [b] providing a list of the database fields, wherein the list includes a descriptor indicating a data category;
>
>   [c] receiving a search selection for a database field on the provided list of the database fields;
>
>   [d] determining a quantity of entries in the selected database field;
>
>   [e] if the quantity exceed a specified amount, truncating data, and displaying the truncated data wherein the truncating reduces characters in one or more entries in the selected database field and the truncated data represents each of the entries in the selected database field; and
>
>   [f] if the quantity does not exceed the specified amount, displaying contents of the database field.

'720 patent, cl. 1.

7

***Oracle Database:***   Regarding the Oracle Database, at a minimum, Plaintiffs fail to plausibly plead that the products satisfy elements [a], [b], and [e].

Element [a] requires "determining a database schema for a database, wherein the database includes database fields."  Plaintiffs' claim chart states only that "Oracle Database can determine a database schema for a database, the database includes database fields.  For example, Oracle Database organize [sic] object as schema, rows of records are composed of columns that represent the fields of the records."  Compl., Ex. B at 4.  The first sentence is a legal conclusion, merely reciting the claim language.  The second sentence is immaterial, at best alleging that the accused Oracle Database organizes data in schemas, rows, and columns.  But the claim is directed to a "method … for *searching* databases," and that method requires "*determining*" a database schema.  '720 patent, cl. 1 (emphases added).  To plead infringement of this claim element, therefore, Plaintiffs must identify a search method that *determines* a database schema.  *See id.*  Plaintiffs, however, only point to the *presence* of a database schema and provide no factual allegations explaining how Oracle Database "determin[es]" a database schema.  *See* Compl., Ex. B.  Moreover, the patent makes clear that a search engine—not the database itself—performs this step.  *See, e.g.*, '720 patent, Abstract ("A user selects a desired search term, and the search engine searches the database for all instances of the desired term."); *id.* at 5:43-45 ("The search-on-the fly function of the search engine 125 begins by determining available data fields of the database 12.").  Yet, Plaintiffs identify no search engine when mapping this claim element.  *See* Compl., Ex. B at 4.

Plaintiffs fail to plausibly plead element [b] for the same reasons.  Element [b] requires "providing a list of the database fields, wherein the list includes a descriptor indicating a data category."  '720 patent, cl. 1.  As with element [a], Plaintiffs' claim chart merely parrots the claim language.  Compl., Ex. B at 4.  The only additional information Plaintiffs provide is that "Oracle Database uses columns in a table to represents [*sic*] fields" and that "Table columns (a list of the database fields) are used to hold data, the list includes a descriptor (data type attribute) indicating a data category."  *Id.* at 4-6.  Restating the claim language provides no factual content about the

8

accused Oracle product. *See, e.g.*, *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."). And the statements that Oracle Database uses columns to represent fields and that columns hold data—even accepted as true—are irrelevant to the claim limitation. Plaintiffs fail to allege how using columns to represent fields translates to "providing a list of the database fields" as the claim requires. In other words, Plaintiffs plead that Oracle Databases are comprised of columns holding data but say nothing about what provides a list of database fields or how that is accomplished. And again, the patent makes clear that a component of the search engine—not the database—performs this step. *See, e.g., id.* at 4:62-64 ("Finally, a database qualifier 160 receives information 161 from the database driver 170 and provides a list 163 of available data fields from the database 12."); *id.* at 9:27-29 ("The database qualifier 160 provides data field information at the start of a search or when the search engine 125 is refreshed"); *id.* at Fig. 3 (showing that "a database qualifier" is a component of the "search-on-the-fly search engine"). But Plaintiffs identify no such search engine when mapping this claim limitation.

Plaintiffs make these same conclusory and inapposite allegations regarding element [e], which requires "truncating data, and displaying the truncated data wherein the truncating reduces characters in one or more entries in the selected database fields and the truncated data represents each of the entries in the selected database field." '720 patent, cl. 1. Again, truncating search results is a step performed by the *search engine*, not by the *database*. *See id.*, Abstract ("[T]he search engine executes a truncation routine so that the returned data is easily displayed."); *id.* at 5:30-34 ("The search engine 125 may conduct a search using one or more search cycles. A search cycle includes receipt of a request 114, any necessary formatting of the request 114, and any necessary truncation steps."); *id.* at 5:63-67 ("[T]he search engine 125 may … attempt to reduce, or truncate, the result list until the result list may be displayed."). Indeed, Plaintiffs' Complaint acknowledges this by citing SQL as satisfying this claim limitation. Compl., Ex. B at 10-13. SQL is a programming language that has existed since the 1970s. It can be used to query databases and

9

build applications. By relying on SQL to satisfy element [e], Plaintiffs acknowledge that the database itself does not truncate data. *See id.* Moreover, Plaintiffs do not allege that Oracle (or anyone else) has used SQL to build a search engine that searches a database and truncates responsive data in the manner required by the '720 patent. Nor do Plaintiffs even explain how someone would use SQL to do so or why merely using SQL would implicate Oracle's Database products. In short, Plaintiffs claim chart wholly fails to plead factual content that allows the Court to draw the reasonable inference that Oracle Database infringes the '720 patent.

*Oracle ATG:* Plaintiffs similarly fail to plead plausible factual content to support its allegations that Oracle ATG infringes the '720 patent. Unlike its allegations for Oracle Database, Plaintiffs appear to allege that Oracle ATG comprises a search engine, but Plaintiffs fail to explain how step [e] is performed. Step [e] provides that "if the quantity [of entries] exceed[s] a specified amount, truncating data, and displaying the truncated data wherein the truncating reduces characters in one or more entries in the selected database field and the truncated data represents each of the entries in the selected database field." '720 patent, cl. 1. In mapping this claim element, Plaintiffs recite no features or functions of Oracle ATG; instead, they point to an entirely separate application, "Oracle Visual Builder," and plead that that application has a feature that could perform this step. Compl., Ex. C at 12. The body of the Complaint nowhere mentions the Oracle Visual Builder application. *See generally* Compl. And even if it did, neither the Complaint nor Plaintiffs' claim chart allege that the Oracle Visual Builder Application works in combination with Oracle ATG to perform step [e]. Nor do the Complaint or claim chart anywhere explain how Oracle ATG—as opposed to Oracle Visual Builder—performs this step. Plaintiffs have thus failed to plead factual content supporting the inference that Oracle ATG infringes the '720 patent.

      **b.**      **'100 Patent**

Plaintiffs' allegations regarding the '100 patent fare no better. As with the '720 patent, Plaintiffs attempted to map claim 1 of the '100 patent to each accused product. Claim 1 of the '100 patent recites:

      1. A computer-based method for creating a data report, comprising:

>[a] receiving a query, whereby the query comprises a database search request, and wherein the database is searched using an on-the-fly search;
>
>[b] a query tweaker generating a defined query of the database from the received query, wherein generating the defined query includes the query tweaker performing transformations and corrections on the received query;
>
>[c] accessing one or more databases, using a search engine, per the defined query;
>
>[d] generating a search result based on the database access, wherein the search result includes one or more descriptors indicating corresponding data categories; and
>
>[e] creating a template of the search result, wherein the template comprises links to the data categories described by the one or more descriptors.

'100 patent, cl. 1.

*Oracle Database:* At a minimum, Plaintiffs fail to plead factual content supporting the inference that Oracle Database satisfies elements [c] and [e]. Element [c] requires "accessing one or more databases, using a search engine, per the defined query." '100 patent, cl. 1. The entirety of Plaintiffs' claim mapping for this element states that "Oracle Database can use a search engine to access one or more databases, per the defined query" and then shows a screenshot of a title of an independent news article about Oracle software expanding to third-party data sources. Compl., Ex. E at 9. Plaintiffs' conclusory allegation parroting the claim language does not support an inference that Oracle Database actually performs this step. *See Bot M8*, 4 F.4th at 1353. Moreover, the news article to which Plaintiffs point deals with an entirely separate product—Oracle's "enterprise search application." But a claim can only be infringed when every claim limitation is performed by the accused product. *See, e.g., Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). "Thus, if any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (internal quotation marks omitted). Plaintiffs wholly fail to plead how *Oracle Database* satisfies element [c], literally or under a doctrine of equivalents theory. Nor do Plaintiffs allege that Oracle Database somehow uses or works in combination with the enterprise search application, let alone how it does so in an infringing manner.

Plaintiffs' allegations regarding element [e] similarly fail to provide any supporting factual content. Element [e] requires "creating a template of the search result, wherein the template comprises links to the data categories described by the one or more descriptors." '100 patent, cl. 1. Aside from parroting the claim language, Plaintiffs merely allege that "Oracle Database can create a report template." Compl., Ex. E at 12. Plaintiffs provide no factual content explaining how Oracle Database creates a template *of search results* that have been returned *in response to a query*. Nothing in the "report templates" section cited by Plaintiffs shows that the templates are created from search results that have already been returned. *Id.* at 13. Nor does anything in the cited evidence indicate that the "report templates" would include "links" to data categories. *Id.*

***Oracle ATG:*** Plaintiffs also fail to provide any factual content supporting the inference that Oracle ATG satisfies element [e]. Like its mapping to Oracle Database, Plaintiffs' allegations regarding Oracle ATG merely parrot the claim language and state that Oracle ATG "can create a report template (template page)." Compl., Ex. F.[2] Again, Plaintiffs provide no factual content explaining how Oracle ATG creates a template *of search results* that have been returned *in response to a query* as required by the claim. Indeed, the report templates to which Plaintiffs cite are not templates of search results; rather, they are templates for web pages that display individual products. *Id.* at 13 ("Rather than requiring you to create a separate JSP for each page on your commerce cite, you can create template pages that fill in the product's properties dynamically."). Plaintiffs have thus failed to plead any factual allegation to meet element [e] and, as a result, the claims of direct infringement should be dismissed.

Courts in this district have repeatedly dismissed similar conclusory allegations as inadequately pleaded. In *Vervain*, 2022 WL 23469, at *5, for example, the plaintiff's infringement allegations—like here—merely tracked the claim language and attached photos of the accused products, "summarily alleging that each and every limitation is satisfied." In dismissing the claims as inadequately pleaded, the court explained that attaching a claim chart to a complaint does not

---

[2] Plaintiffs' claim chart cites to Oracle Database for this element (Compl., Ex. F at 13), but Oracle assumes this was a clerical error and that Plaintiffs intended to cite Oracle ATG.

12

necessarily satisfy the pleading requirements: "The Court must consider whether the factual allegations therein, 'when taken as true, articulate why it is plausible that the accused product infringes the patent claim.'" *Id.* at *7 (quoting *Bot M8*, 4 F.4th at 1353). As in *Vervain*, Plaintiffs' allegations have not met that standard. *See also Bowmar*, 2023 WL 28438, at *4 (dismissing complaint that "include[d] no factual content supporting its allegation" of infringement).

### 3. Having Failed to Plead Direct Infringement, Plaintiffs' Indirect Infringement Claims Must Also Fail

Because Plaintiffs fail to adequately plead direct infringement, their indirect infringement claims also fail. *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("Because liability for indirect infringement of a patent requires direct infringement, … complaints must plausibly allege that the [asserted] patent was directly infringed to survive [a] motion to dismiss."). The Court should thus dismiss all claims in the Complaint as insufficiently pleaded under Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss Vilox LLC for lack of standing under Rule 12(b)(1) without leave to amend and dismiss the Complaint as inadequately pleaded under Rule 12(b)(6).

Dated: February 13, 2023

Respectfully submitted,

*/s/ Melissa R. Smith*
Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

Jared Bobrow (CA State Bar No. 133712)
Diana Rutowski (CA State Bar No. 233878)
Jason Yu (CA State Bar No. 274215)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**

13

          1000 Marsh Road
          Menlo Park, CA 94025
          Tel: (650) 614-7400
          Fax: (650) 614-7401
          jbobrow@orrick.com
          drutowski@orrick.com
          jasonyu@orrick.com

          Kristina D. McKenna
          (MA State Bar No. 706245)
          **ORRICK, HERRINGTON & SUTCLIFFE LLP**
          222 Berkeley Street
          Boston, MA 02116
          Tel: (617) 880-1800
          Fax: (617) 880-1801
          kmckenna@orrick.com

          *Attorneys for Defendant Oracle Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 13, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

          */s/ Melissa R. Smith*
          Melissa R. Smith