13:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


VILOX TECHNOLOGIES, LLC, and )
JOSEPH L. DE BELLIS,          )
                              )
            Plaintiffs,       )
                              ) C.A. No. 23-302(MN)
v.                            )
                              )
ORACLE CORPORATION,           )
                              )
            Defendant.        )



             Monday, September 9, 2024
             2:00 p.m.
             Oral Argument


             844 King Street
             Wilmington, Delaware



BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge



APPEARANCES:


             RAMEY, LLP
             BY:  WILLIAM P. RAMEY, III, ESQ.

             -and-

             JOSEPH DeBELLIS, Pro Se


                    Counsel for the Plaintiffs

```
 1    APPEARANCES CONTINUED:

 2
                  MORRIS NICHOLS ARSHT & TUNNELL LLP
 3                BY:  JACK BLUMENFELD, ESQ.

 4                -and-

 5                ORRICK, HERRINGTON & SUTCLIFFE, LLP
                  BY:  JARED BOBROW, ESQ.
 6

 7                       Counsel for the Defendant

 8

 9

10                       _ _ _ _ _ _ _ _ _ _

11
```

| | | |
|---|---|---|
| 13:50:12 | 12 | |
| 13:50:12 | 13 | COURTROOM DEPUTY:  All rise.  The United States |
| 13:50:30 | 14 | District Court for the District of Delaware is now in |
| 13:50:33 | 15 | session.  The Honorable Maryellen Noreika presiding. |
| 14:18:13 | 16 | THE COURT:  All right.  Good afternoon, |
| 14:18:17 | 17 | everyone.  Please be seated. |
| 14:18:19 | 18 | All right.  We can start with some brief |
| 14:18:24 | 19 | introductions. |
| 14:18:30 | 20 | THE COURT:  Mr. Blumenfeld. |
| 14:18:32 | 21 | MR. BLUMENFELD:  I'm willing to go first, Your |
| 14:18:34 | 22 | Honor. |
| 14:18:34 | 23 | THE COURT:  You're the plaintiff in a related |
| 14:18:36 | 24 | case. |
| 14:18:36 | 25 | MR. BLUMENFELD:  Jack Blumenfeld from Morris |

14:18:41  1    Nichols for Oracle.  With me is Jared Bobrow from Orrick.

14:18:46  2                THE COURT:  Good afternoon.

14:18:48  3                DR. DeBELLIS:  I'm Joseph DeBellis and I

14:18:53  4    represent myself.  Good afternoon.

14:18:56  5                MR. RAMEY:  Good afternoon.  I'm Bill Ramey from

14:18:59  6    Vilox.  Thank you, Your Honor.  We're ready to proceed.

14:19:02  7                THE COURT:  Thanks.

14:19:03  8                So we have this motion to dismiss the Amended

14:19:08  9    Complaint.  And there are four claims that are asserted in

14:19:16 10    the Amended Complaint.  I have some questions about the

14:19:24 11    method claims that are asserted and who it is that is doing

14:19:30 12    what is alleged.  But I want to be a little bit careful

14:19:38 13    because Mr. Bobrow, as I understand it, your position is if

14:19:41 14    I dismiss this complaint with prejudice as you requested,

14:19:45 15    you're going to essentially declare victory in your

14:19:48 16    declaratory judgment action and he can't bring these claims.

14:19:52 17    Right?

14:19:52 18                MR. BOBROW:  Yes, Your Honor.

14:19:53 19                THE COURT:  All right.  So given that he is a

14:19:57 20    pro se defendant, I feel like I need to give a little bit

14:20:00 21    more leeway and a little bit more guidance because I think

14:20:03 22    that the case law merits that I do that, especially given

14:20:13 23    your position here.

14:20:16 24                So what I need to understand is for the -- let's

14:20:28 25    stick with the method claims.  Tell me how these things work

14:20:32  1    because I get this, the database does this, or the something

14:20:37  2    does it.  I don't know what Oracle's role is.  I don't know

14:20:42  3    if the plaintiff knows.  Can you help me understand how

14:20:46  4    these things work?

14:20:48  5            MR. BOBROW:  Yes, Your Honor.  So let me start

14:20:50  6    with the basic fact here that there are two products, let's

14:20:56  7    call them, that are being asserted against Oracle.

14:21:01  8            THE COURT:  The ATG.

14:21:03  9            MR. BOBROW:  ATG, right, so Oracle Database is

14:21:07 10    essentially a relational database management system.  It

14:21:13 11    stores information, organizes information, and you can

14:21:17 12    create and write programs --

14:21:20 13            THE COURT:  So what I'm trying to figure out is

14:21:23 14    who -- I mean, when you say that, is that like if you said I

14:21:29 15    have a license to use Excel, Microsoft Excel and I can put

14:21:37 16    in whatever I want and it will allow me to sort it in the

14:21:40 17    way that I want to sort it, or do whatever I want with it.

14:21:44 18    Is it like that, or is it where Oracle has some more role in

14:21:52 19    this storing information, you know, organizing information?

14:21:59 20            MR. BOBROW:  So there are various ways that a

14:22:03 21    database can be accessed.  And the databases are essentially

14:22:07 22    accessed through queries that are typically written in a

14:22:10 23    language called SQL.  The question you're forming is who is

14:22:14 24    the one that -- who is doing that.

14:22:17 25            THE COURT:  Who is putting the information --

14:22:18  1    whose information is in there?  Who is putting the

14:22:21  2    information in there and who is doing the queries?

14:22:24  3            MR. BOBROW:  So, for example a customer of

14:22:26  4    Oracle, someone who has got a license to Oracle Database can

14:22:31  5    store information in that database and can query that

14:22:34  6    database, and that's the typical use scenario is there is

14:22:38  7    someone who has purchased the product through license for

14:22:40  8    some reason and then is storing information in it and then

14:22:44  9    wants to query it to get information out.  Often this is

14:22:49 10    financial information that gets stored.  Sometimes it's

14:22:53 11    information about employees and, you know, their ID number,

14:22:56 12    their Social Security number, their date of hire, all of

14:22:59 13    that can get organized in tables and these tables have

14:23:02 14    essentially column headings and you can query the database

14:23:07 15    to do different things.

14:23:08 16            Now, there is the ability with these kinds of

14:23:13 17    products to develop applications.  Okay?  There are people

14:23:19 18    out there who make a living out of developing applications

14:23:22 19    to work with other software.  And in the case of Oracle

14:23:27 20    Database, there are ways that developers, software

14:23:30 21    developers can develop programs that can then interact with

14:23:34 22    the database.  And that's essentially what some of these

14:23:39 23    allegations are about in this case.

14:23:41 24            So if we start with the '720 patent, there are

14:23:47 25    two claims that are being asserted.  Claim 1 is the method

14:23:52  1    claim, and claim 31 is the apparatus claim.  All right?  And

14:23:57  2    claim 1 is being asserted against Database and ATG, claim 31

14:24:06  3    only against Database.  Both claims, claim 1 and 31 are

14:24:10  4    basically about searching a database.  Right?  So databases

14:24:16  5    get searched, queries are submitted to them.  That's as old

14:24:20  6    as the hills.  That's gone on forever.

14:24:22  7              What this patent, and it claims it in two

14:24:26  8    slightly different flavors between claim 1 and claim 31, but

14:24:29  9    what the claims are about is the query goes in, results are

14:24:33 10    returned, and if the number of results that are returned

14:24:37 11    exceed a predetermined number, something happens.

14:24:41 12              In the case of claim 1, the data gets truncated.

14:24:46 13    You truncate the returned entries.  In the case of claim 31,

14:24:51 14    you reformat the search request.  But in all cases, you're

14:24:56 15    comparing the numbers returned to a determined quantity and

14:25:01 16    saying ah-hah, is the amount above it or not.  If the number

14:25:05 17    of entry returns exceeds that number, claim 1 you truncate,

14:25:10 18    claim 31 you reformat the query so as to reduce the amount

14:25:15 19    of data.

14:25:16 20              And in no case has the plaintiff identified

14:25:19 21    anywhere in either product where that occurs, either that it

14:25:25 22    occurs for purposes of the method or that that function is

14:25:29 23    in, in this case, Oracle Database.

14:25:33 24              So starting with --

14:25:34 25              THE COURT:  All right.  So let me just pull up

14:25:37  1    the Amended Complaint.  Okay.  So I'm just looking at the

14:26:09  2    exhibits here.

14:26:11  3                    MR. BOBROW:  Okay.

14:26:12  4                    THE COURT:  Because I want to see what he says.

14:26:15  5    First of all, I want to make sure I have the language that

14:26:18  6    you're referring to so when I ask him questions I get it.

14:26:21  7                    MR. BOBROW:  Sure.

14:26:22  8                    THE COURT:  You have the -- these are not really

14:26:28  9    set out very helpful.

14:26:30 10                    MR. BOBROW:  Your Honor, because if you have

14:26:33 11    Exhibit B, as in boy.

14:26:34 12                    THE COURT:  Yes.

14:26:35 13                    MR. BOBROW:  That's the one that discusses claim

14:26:37 14    1.

14:26:37 15                    THE COURT:  It's all the -- the pages are all

14:26:40 16    out of order, so I have parts of patents and then I have

14:26:44 17    parts of charts, and it's not -- okay.  I got it.  Okay.

14:26:48 18                    So I have Exhibit B, claim 1, a method

14:26:53 19    implemented, so what is this element that you're talking

14:26:56 20    about here?

14:26:57 21                    MR. BOBROW:  So the element that I'm talking

14:26:59 22    about in Exhibit B appears on page 10.  And the claim

14:27:05 23    element is set out to the left.  And it says, if the

14:27:10 24    quantity --

14:27:12 25                    THE COURT:  Hold on.  If the quantity, okay.

14:27:19  1          MR. BOBROW:  So it says, "if the quantity

14:27:21  2   exceeds a specified amount, truncating data and displaying

14:27:26  3   the truncated data wherein the truncating reduces characters

14:27:32  4   in one or more entries in the database."

14:27:34  5          THE COURT:  So that's like in the -- I'm

14:27:39  6   picturing what's in the patent where you had like author,

14:27:44  7   like --

14:27:45  8          MR. BOBROW:  You might have a field that comes

14:27:47  9   back ID, then --

14:27:49 10          THE COURT:  I wasn't sure how that was

14:27:51 11   truncating because it seemed like you were adding, start

14:27:54 12   with authors beginning with D, if you get too many it's like

14:27:58 13   D E.

14:27:59 14          MR. BOBROW:  Right.  If I have twenty-five

14:28:00 15   authors with the last name of D and twenty-five is my

14:28:05 16   predetermined limit and there are thirty-five and not

14:28:08 17   twenty-five, then what it's saying it's going to do is

14:28:11 18   truncate the data.  That's what this is about.

14:28:14 19          If you look through everything that's cited here

14:28:16 20   as well as everything that's sighted in the Amended

14:28:19 21   Complaint itself, there is nothing that says that you

14:28:21 22   truncate in response to a determination --

14:28:25 23          THE COURT:  So here is my question.  In the

14:28:27 24   Exhibit B, there is just this statement that says Oracle

14:28:34 25   Database can determine if the quantity exceeds a specified

amount, truncating data and displaying the truncated data
wherein the truncating reduces characters in one or more
entries.  I get it, that's just basically saying what's in
the claim, but this is a motion to dismiss, and he is
alleging that the element is met.

          I mean, my problem with the method claims is
more I have no idea who is doing this other than a database
which I don't know -- I don't know who is responsible for
that.

          So he says this element is met.  And you just
told me there is no place where he says this element is met.
That's what I'm not understanding.

          MR. BOBROW:  Yes, Your Honor.  He parrots the
claim language and says --

          THE COURT:  I get it, but I'm not that rigorous
when it comes to what I require to get past a motion to
dismiss.  Right?  If you say all the elements are met, for
me, you know, that might be enough, at least at this stage.
So what's the problem here?

          MR. BOBROW:  Well, the problem is that that is a
mere conclusion that is not supported by any sort of facts
or any sort of plausible inference that that's the case
because there is nothing that he's pointed to in any sort of
documentation that says in substance or in effect that there
is any truncation that occurs as a result of --

14:30:09  1          THE COURT:  Again, you're not focused on my

14:30:13  2     concern which is that he's saying this element is met.  And

14:30:17  3     you're like, well, there is no document.  That's a

14:30:21  4     contention.  I don't require you to have all your

14:30:25  5     contentions in a complaint.  Right?  I mean, for me, if the

14:30:30  6     complaint says they infringe claim 1 and they perform, you

14:30:34  7     know, the accused device performs each and every element,

14:30:40  8     that's probably good enough to get through a motion to

14:30:43  9     dismiss.  Now you're like well, he said it, but he doesn't

14:30:47 10     give me specific documents.  Okay?  That seems like a lot to

14:30:53 11     ask for me for a motion to dismiss.

14:30:56 12          MR. BOBROW:  Your Honor, we simply -- we

14:30:58 13     disagree.  We think that the law is that you cannot simply

14:31:01 14     rely on parroting the claim language and that's all that has

14:31:05 15     happened here.  There is a parroting of the claim language

14:31:08 16     and that's not enough to get past a motion to dismiss.  You

14:31:11 17     need to provide some facts that make the allegation

14:31:14 18     plausible.

14:31:15 19          THE COURT:  All right.  He goes on and says you

14:31:19 20     can format data results, you can display results, okay,

14:31:23 21     that's not truncating.  And then he says, Oracle Database

14:31:29 22     has group by clause to groups -- this isn't even in English.

14:31:36 23     Oracle Database has group by clause to groups a result into

14:31:41 24     subsets that have matching values for one or more columns.

14:31:45 25     Truncating reduces characters in one or more entries in the

14:31:50  1  selected database field and the truncated data represents

14:31:54  2  each of the entries in the selected database field.

14:31:58  3          So apparently he's using this group by and

14:32:07  4  saying --

14:32:13  5          MR. BOBROW:  That's the problem is there is

14:32:15  6  nothing that says that you truncate if a number is exceeded.

14:32:19  7  If a number of results is exceeded, you truncate, that's

14:32:22  8  what the claim is about, or you reformat the search request

14:32:25  9  which is what the other claim is about.  And none of these

14:32:28 10  documents say that.  Some of them talk about grouping, some

14:32:31 11  of them talk about truncating, but none of them say we're

14:32:35 12  going to truncate if a number, a predetermined number is

14:32:38 13  exceeded.  And that's been our complaint from the beginning.

14:32:41 14  Truncation and grouping and all of these functions are as

14:32:45 15  old as the hills.  They're as old as databases.  And what

14:32:49 16  this patent purported to add by way of the invention is

14:32:52 17  we're going to truncate if the number is exceeded.

14:32:55 18          So where is that allegation?  Where is the --

14:32:58 19  the parroting is there, but there is no suggestion that

14:33:01 20  that's what Oracle actually does.

14:33:03 21          THE COURT:  Does Oracle do that?

14:33:05 22          MR. BOBROW:  Not that we know of.  So that's the

14:33:09 23  issue.  You know, at this point we haven't received an

14:33:14 24  allegation that says if -- that here is a program, or here

14:33:17 25  is a customer, or here is something where someone is doing

14:33:22  1   this, numbers exceeded, truncate, numbers exceeded, reformat

14:33:27  2   the search.  We don't have any sort of notice that that's

14:33:31  3   happening.  And that's just claim 1.

14:33:33  4          But as to ATG it's even worse because as to ATG,

14:33:38  5   the allegation for this same limitation relies on a

14:33:43  6   different product altogether.  It relies on something called

14:33:46  7   Oracle Visual Builder which is an application development

14:33:50  8   tool.  And there is no allegations, there is no document,

14:33:55  9   there is no substance, anything that suggesting that ATG and

14:34:01 10   Oracle Visual Builder work together to do this.

14:34:03 11          And then on claim 31, the claim charge is simply

14:34:09 12   blank.  There is nothing there.

14:34:10 13          THE COURT:  Yeah, that one there is --

14:34:12 14          MR. BOBROW:  There is an element that's

14:34:14 15   completely missing, so we have the element that's missing,

14:34:16 16   claim 31, we have Visual Builder, and then for claim 1 we

14:34:20 17   have a hodgepodge of documents, none of which suggest what

14:34:23 18   was really the alleged invention here which is truncating

14:34:29 19   when a determined number of results are returned.

14:34:35 20          THE COURT:  So on this one page 13 where you

14:34:39 21   have salary, you're truncating from 19,333.33, maybe you

14:34:47 22   would truncate the entry, but that's different from what you

14:34:49 23   say the claim requires which the claim requires is you're

14:34:52 24   bringing all these salaries in and it says if you have

14:34:56 25   salaries for more than twenty-five people, you have to

14:34:58  1    truncate down to twenty-five people.

14:35:00  2              MR. BOBROW:  Yes, exactly.  So the idea is, I

14:35:04  3    think what the patent -- I think that's very close but I

14:35:08  4    think it's more like I am going to figure out salaries for

14:35:12  5    my employees and I am going to cut it off at --

14:35:13  6              THE COURT:  Mr. DeBellis, please sit down and

14:35:17  7    stop.  If you're talking over there, you're not going to be

14:35:20  8    listening to him and I'm going to be asking questions about

14:35:22  9    what he's saying.  And you're also distracting me from

14:35:25 10    understanding what's going on.

14:35:27 11              MR. BOBROW:  So I think this idea is you have

14:35:29 12    this number, you get a set of results that is returned and

14:35:32 13    if that is greater than let's say twenty-five, then you do

14:35:34 14    the truncating.  So if you had results for say thirty-five

14:35:38 15    employees, the idea would be ah-hah, in that case that's

14:35:41 16    over twenty-five, so I'm going to shrink the data down in

14:35:45 17    some fashion.

14:35:47 18              What's on that page of the Amended Complaint is

14:35:52 19    actually, and I think you said it was on page 13.

14:35:57 20              THE COURT:  12.  Sorry, I was looking at this

14:36:00 21    start with the salaries.

14:36:05 22              MR. BOBROW:  Yes.  So there what that's doing is

14:36:09 23    it is taking the numbers that have decimals and --

14:36:13 24              THE COURT:  That's not truncating.

14:36:14 25              MR. BOBROW:  That's not truncating, but it's not

14:36:18 1    truncating based upon a predetermined amount, it's just

14:36:21 2    saying a predetermined number of entries. It's saying if I

14:36:24 3    have six entries, I'll truncate those. If I have

14:36:28 4    thirty-seven entries I'll truncate those. If I have a

14:36:30 5    million, I'll truncate those. That's what that is saying.

14:36:33 6    And there is nothing in here that is saying that that's tied

14:36:36 7    to some number that you have determined and says ah-hah, if

14:36:39 8    it exceeds that, then I'll truncate.

14:36:42 9          So we have that for claim 1, we have the Visual

14:36:46 10   Builder problem, the fact that there is no suggestion that

14:36:48 11   that marries up in any way with ATG and then the blank claim

14:36:53 12   chart for claim 31.

14:36:55 13         THE COURT:  What about the other apparatus claim

14:36:59 14   for the other patent?

14:37:01 15         MR. BOBROW:  For the '100 patent, right. So the

14:37:04 16   '100 patent is of a slightly different flavor than the '720.

14:37:09 17   And what it seems to focus on is this idea of doing

14:37:14 18   searching, quote unquote, on-the-fly. So I'm receiving

14:37:20 19   on-the-fly queries, they go to an on-the-fly report

14:37:26 20   generator, these reports are generated as it says,

14:37:29 21   on-the-fly and essentially it's the same setup, claim 1 is

14:37:36 22   asserted against database in ATG and claim 32 is asserted

14:37:41 23   against database.

14:37:42 24         So you asked about the apparatus claim there,

14:37:45 25   claim 32. So as for that claim, this is the one that --

14:37:51  1    where you have a search on-the-fly report generator.  It

14:37:55  2    receives queries, search request from a search on-the-fly

14:38:02  3    search engine.  Then they have something called a query

14:38:06  4    tweaker, and this query tweaker receives the on-the-fly

14:38:11  5    search request or query and it makes transformations or

14:38:15  6    corrections to it.  And then there is something that then

14:38:17  7    generates reports after that.  Okay?  So there needs to be

14:38:21  8    this query tweaker and there needs to be an on-the-fly

14:38:25  9    search report generator and an on-the-fly search engine.

14:38:28 10         Now, when you look at what is pleaded in the

14:38:31 11    claim chart for this, which is Exhibit G, if you turn to the

14:38:48 12    element -- I'm on pages -- I'm on page 3, Your Honor, of --

14:38:53 13         THE COURT:  I got it.

14:38:54 14         MR. BOBROW:  Okay.  And over on the left-hand

14:38:57 15    side is the claim language which talks about a search

14:39:00 16    on-the-fly report generator that receives raw queries from

14:39:07 17    the on-the-fly search engine and generates a search report

14:39:11 18    and it goes on from there.  What they plead to try to meet

14:39:14 19    this limitation and suggest that at least it's plausible

14:39:17 20    that it's there is something from what's called an

14:39:21 21    Application Developer Guide, and it's talking about dynamic

14:39:28 22    SQL.

14:39:29 23         I think -- remember, this is an apparatus claim,

14:39:31 24    and what this is saying over on the right-hand side of

14:39:34 25    page 3 is is that Dynamic SQL is not part of Oracle

14:39:42 1   Database, it's something that could be used to write a

14:39:45 2   program for Oracle Database, and it starts by saying Dynamic

14:39:52 3   SQL enabled to write programs that reference SQL statements

14:39:55 4   whose full text is not known until run time.  It enables you

14:40:00 5   to write programs.

14:40:01 6          It goes on from there towards the bottom of that

14:40:04 7   same quoted passage, Dynamic SQL enables you to write

14:40:09 8   application code that is reusable because the code defines a

14:40:12 9   process.  It goes on from there.

14:40:14 10         That's what SQL is.  SQL is a language that

14:40:18 11  allows you to write programs and statements and what have

14:40:21 12  you.  But the issue here is this is an apparatus claim being

14:40:27 13  asserted against Oracle Database, and all this says is that

14:40:31 14  you can write dynamic query statements.  It doesn't say that

14:40:36 15  Oracle has this, that it uses this in an on-the-fly report

14:40:40 16  generator or that it uses it in an on-the-fly search engine,

14:40:44 17  it says here is SQL, here is a dynamic version of it that

14:40:48 18  allows to you reference SQL statements and enables you to

14:40:54 19  write application code.  But where is the allegation, the

14:40:58 20  suggestion, the document, the anything that says that that

14:41:01 21  is part of Oracle Database?

14:41:04 22         THE COURT:  So you can use SQL to write a

14:41:07 23  program to use on Oracle Database?

14:41:11 24         MR. BOBROW:  Yes.

14:41:12 25         THE COURT:  They're saying one of the ways you

14:41:15 1    can use SQL is to have dynamic searches.

14:41:22 2             MR. BOBROW:  Yes.

14:41:23 3             THE COURT:  But they never say someone has used

14:41:29 4    Dynamic SQL to write dynamic search programs that are used

14:41:34 5    on the Oracle Database?

14:41:37 6             MR. BOBROW:  Right.  That there is a search

14:41:39 7    on-the-fly report generator, which is what the claim

14:41:42 8    requires, that receives raw queries from a search on-the-fly

14:41:47 9    search engine.  We don't see that.  There is no allegation,

14:41:50 10   no document, no suggestion that Oracle Database has been --

14:41:56 11   that there is an application that is now part of that

14:41:59 12   database that does that.  So is there some customer out

14:42:03 13   there in the world that has done that?  There is no pleading

14:42:06 14   to that effect.  Has Oracle done that internally?  There is

14:42:10 15   no pleading to that effect, so it's not there.

14:42:13 16            THE COURT:  And even if you could use it to do a

14:42:15 17   dynamic search, you need a report generator; right?

14:42:22 18            MR. BOBROW:  Correct, it's got to be an

14:42:25 19   on-the-fly generator and that's got to receive on-the-fly

14:42:28 20   queries.

14:42:29 21            THE COURT:  Got it.

14:42:30 22            MR. BOBROW:  So both of those aspects of being

14:42:32 23   on-the-fly have to be there.  And we simply don't see that

14:42:35 24   in the pleading.  Again, there is the parroting of the

14:42:40 25   language, but when you look at the, essentially the -- what

14:42:43  1   they use as support for it to provide some sort of factual

14:42:49  2   allegation, it simply provides for the idea that gee, there

14:42:53  3   are application developers out there that can use SQL to do

14:42:56  4   something on-the-fly, to write something in a dynamic way,

14:43:00  5   and that simply hasn't been asserted or shown.

14:43:05  6            As it relates to the method claim of the '100

14:43:08  7   patent, again, this is the one that is asserted against

14:43:13  8   Database and against ATG, there are simply similar problems

14:43:19  9   here as there are for the apparatus claim.  There is the

14:43:23 10   on-the-fly problem for claim 1 as against the Oracle

14:43:27 11   Database.  The claim also requires that when you do one of

14:43:31 12   these searches that essentially you get results back, you

14:43:34 13   get search results and then a template is created that

14:43:39 14   essentially corresponds with those results and that template

14:43:44 15   must have links in it to the data category that you are

14:43:47 16   searching.  I think the idea there is I might do a search, a

14:43:51 17   template is created with links in it, that means if I run

14:43:54 18   the same search two months later, I'm trying to get data on

14:43:58 19   employees or something, I don't need to recreate the search,

14:44:01 20   there is a template for it.  With the links you're getting

14:44:04 21   the updated data that might have been put in or deleted from

14:44:08 22   the database.  So I think that's the idea of it.  But

14:44:11 23   nothing in the pleading says that there are links in any of

14:44:14 24   the Oracle Database templates.

14:44:16 25            And as far as the -- as far as ATG goes, this is

14:44:22  1    one where there are two issues as well.  One issue is that

14:44:26  2    there is no suggestion here that Oracle ATG searches a

14:44:32  3    database.  Oracle ATG is essentially a web tool.  It allows

14:44:37  4    people to build and support web pages.  And what the search

14:44:43  5    function that they point to for ATG does is it searches

14:44:47  6    what's called an index which is essentially an abstraction

14:44:51  7    of all kinds of data that you might collect in one way or

14:44:54  8    another, maybe from a document, maybe from a database, maybe

14:44:57  9    from anywhere.  But the index is what is searched by the ATG

14:45:04 10    search function.

14:45:05 11            THE COURT:  But is that a question of claim

14:45:07 12    construction whether the index has sufficient data to be a

14:45:14 13    database?

14:45:14 14            MR. BOBROW:  I don't think so, Your Honor,

14:45:16 15    because a database, as I mentioned before, is essentially

14:45:20 16    the data management construct with tables and relations and

14:45:25 17    columns, that's what a database is.  This index is just an

14:45:31 18    abstraction.  It could be a document.  To say that a

14:45:34 19    database is a word document would be absurd.  But that's

14:45:37 20    what that index could be is just an abstraction of data, not

14:45:41 21    the database.

14:45:43 22            And, in fact, the documents that are attached to

14:45:47 23    the pleadings distinguish between a database on the one hand

14:45:51 24    and the index on the other.  A database could have

14:45:54 25    information in it that is put into the index, but it's not

14:45:59  1    -- the index is not a database.  So that's what's being

14:46:02  2    searched.

14:46:02  3              THE COURT:  I guess I'm not sure -- okay, you

14:46:07  4    say that, but I just don't know if that's an issue of claim

14:46:10  5    construction.  What counts as a database?  I don't know the

14:46:13  6    answer to that.

14:46:14  7              MR. BOBROW:  I understand, Your Honor.

14:46:15  8              THE COURT:  As soon as you said oh, it's an

14:46:18  9    index, the index has certain data, okay, well, maybe that

14:46:22 10    still falls within the claim, the language database

14:46:27 11    depending on how that's construed.  I don't know.

14:46:30 12              MR. BOBROW:  I would only submit, Your Honor,

14:46:32 13    and I understand fully what you're saying, my only response

14:46:35 14    to it is that the documents that are referred to here are

14:46:41 15    simply drawing that distinction that I mentioned.  So I

14:46:45 16    think that that would be a farfetched construction to say

14:46:49 17    the least.

14:46:50 18              In all events, there is another problem with the

14:46:53 19    ATG pleading which is that there is no allegation here with

14:46:58 20    any sort of factual support that the template reflects the

14:47:02 21    search results.  The templates that are being pointed to

14:47:06 22    here are essentially like product templates where let's say

14:47:10 23    that your -- you have a website and you're selling

14:47:14 24    automobiles, and the -- you know, the template that's

14:47:17 25    referred to in these papers is the template that says well,

14:47:20  1    the photo of the car goes here.  The information about how

14:47:24  2    many cylinders are in the car is here.  Its gas mileage goes

14:47:29  3    here.  That's the template.  The template of the patent is a

14:47:32  4    template of the search results when you query the database,

14:47:36  5    so these are essentially apples and oranges.

14:47:39  6              Your Honor, we think that the pleading simply

14:47:41  7    doesn't go far enough.  Yes, it parrots the claim language,

14:47:46  8    but when you look at the facts that are pleaded, it simply

14:47:51  9    goes astray and doesn't plausibly allege infringement of any

14:47:56 10    of the asserted claims.

14:47:58 11              THE COURT:  Okay.  All right.  Let's start with

14:48:09 12    the pleading in Exhibit C which is asserting the apparatus

14:48:22 13    claim, claim 31 of the '720 patent against Oracle Database.

14:48:28 14    And on page 9 of Exhibit C, there is a whole part of a claim

14:48:43 15    that is blank.

14:48:44 16              MR. RAMEY:  Your Honor, may I approach?

14:48:46 17              THE COURT:  Yes.

14:48:49 18              MR. RAMEY:  This is the presentation for

14:48:52 19    Dr. DeBellis.  Thank you, Your Honor.

14:49:04 20              THE COURT:  Is this the same thing that was sent

14:49:06 21    to us before?

14:49:07 22              DR. DeBELLIS:  It was sent yesterday, on Friday.

14:49:09 23              THE COURT:  All right.  So I'm asking, though,

14:49:13 24    about this question, which is Exhibit C, claim 31 of the

14:49:25 25    '720 patent talking about wherein the request analyzing

14:49:28  1    requests an truncater, the truncater determining the size of

14:49:31  2    the data field, blah, blah, blah, nothing, there is no

14:49:34  3    allegation that that's met, no support for it, nothing.

14:49:38  4          DR. DeBELLIS:  Your Honor, I'm sorry, but I

14:49:40  5    don't have a copy of the Exhibit C on hand.

14:49:44  6          THE COURT:  This is the pleading that you're

14:49:46  7    here to defend, so I don't know what to tell you because I

14:49:52  8    would have expected you to have a copy of the pleading that

14:49:55  9    you think you're trying to say is sufficient.

14:50:07  10          DR. DeBELLIS:  Unfortunately I did not bring --

14:50:11  11    I had two -- I don't have a copy of an exhibit in front of

14:50:14  12    me.  I compiled a relatively simple argument for why I

14:50:20  13    believe --

14:50:21  14          THE COURT:  That's not what I'm asking, though.

14:50:23  15    I get it, but this claim is not -- will you give up this

14:50:26  16    claim if this claim is not in this relatively brief whatever

14:50:31  17    that you have?

14:50:33  18          MR. RAMEY:  Your Honor, may I interject?  I

14:50:35  19    don't mean to step on Dr. DeBellis' foot.  That wherein

14:50:38  20    clause simply limits the box that was before that, so the

14:50:41  21    same figure can be used for the box --

14:50:44  22          THE COURT:  Well, that's not -- that's you,

14:50:46  23    that's adding to the pleading.  That is not in the pleading;

14:50:49  24    right?

14:50:49  25          MR. RAMEY:  We did repeat that, the same

14:50:52  1    illustration to the right of that claim, correct, Your

14:50:54  2    Honor.

14:50:54  3             THE COURT:  No, it's blank.

14:50:56  4             MR. RAMEY:  Correct, Your Honor.  Yes, Your

14:50:59  5    Honor.  All I'm saying it was meant to be the same

14:51:01  6    illustration from the previous claim block.

14:51:04  7             THE COURT:  Except that the previous claim says

14:51:07  8    zero, does not use the word truncating, does not talk about

14:51:11  9    anything being truncated, so I don't understand how you're

14:51:16 10    saying that helps.

14:51:17 11             MR. RAMEY:  My apologies.  I was just saying

14:51:19 12    what we intended to get it from.

14:51:37 13             DR. DeBELLIS:  I'm sorry, Your Honor.  I

14:51:39 14    apologize about being poorly prepared.  I did put these

14:51:43 15    together myself, and I apologize, I'm not sure exactly -- I

14:51:52 16    don't have that in front of me.

14:52:01 17             THE COURT:  Okay.  Well, so what is t your

14:52:06 18    evidence that any Oracle product meets that element?  Do you

14:52:12 19    have the patent with you?

14:52:43 20             DR. DeBELLIS:  Your Honor, I did not -- I was

14:52:45 21    not able to bring my laptop and unfortunately a lot of the

14:52:48 22    papers that I had prepared for the case were in that

14:52:53 23    briefcase and I left it at the hotel.  And I do apologize.

14:53:00 24    I don't have my patents and I don't have my copy of the

14:53:03 25    amended complaints with the exhibits.  And no disrespect was

14:53:12  1    intended at all.

14:53:14  2            THE COURT:  I appreciate that.  I just don't

14:53:16  3    know how you expect me to rule -- I'm giving you an

14:53:24  4    opportunity to explain to me how this pleading is

14:53:28  5    sufficient, and you can't because you don't have -- you

14:53:33  6    don't even have the patent or the claims, or anything.  So

14:53:38  7    what is your basis -- I guess there is an element in claim

14:53:43  8    31 of the '720 patent that says, "Wherein the request

14:53:48  9    analyzer comprises a truncater.  The truncater determining a

14:53:53 10    size of a data field comparing the size to a specified limit

14:53:57 11    and reformatting the formatted search request wherein the

14:54:02 12    reformatted search request causes the database driver to

14:54:05 13    return data with characters reduced in one or more entries

14:54:10 14    and the return data represents each entry in the data

14:54:12 15    field."

14:54:13 16            There is nothing in the claim chart that you

14:54:16 17    attach that says that this element is met.  There is no

14:54:21 18    support for anything to say that this element is met.  What

14:54:28 19    am I supposed to do with that?  I can't -- they point out

14:54:32 20    you haven't alleged that it's met.  You can't tell me that

14:54:36 21    it has been, right?

14:54:38 22            DR. DeBELLIS:  Yes, Your Honor.

14:54:43 23            THE COURT:  So if I were to give you an

14:54:45 24    opportunity to amend, what would you say, that the Oracle

14:54:53 25    Database meets that limitation where it truncates it,

14:54:56 1    compares it to a -- compares it to a specified limit and

14:55:06 2    then reformats?  What is it that you would point to to say

14:55:10 3    that the Oracle Database does that?

14:55:34 4              DR. DeBELLIS:  I'm not prepared to answer that

14:55:37 5    at this time, Your Honor.  I'm sorry.

14:55:38 6              THE COURT:  All right.  Sir, I appreciate that

14:55:42 7    you left your laptop back at the hotel, but if you expect to

14:55:47 8    proceed pro se in this case where we would have a jury over

14:55:53 9    there, how is it that you expect to prosecute your case?

14:55:56 10             DR. DeBELLIS:  Your Honor, I had -- it's been a

14:56:01 11   lot of work and unfortunately there are flaws in all of it,

14:56:07 12   including the fact that I'm managing my own papers and

14:56:10 13   trying to keep everything straight.  And that's no excuse,

14:56:14 14   clearly.  I focused for this particular opportunity on a

14:56:21 15   specific scenario which was revolving around the claim 1 of

14:56:26 16   the '100 patent, and that was what I was working on.  I

14:56:32 17   moved everything into my small briefcase and when I found

14:56:35 18   out I couldn't bring my laptop, I left everything else.  And

14:56:39 19   it's also escaped me because I'm quite nervous.

14:56:44 20             THE COURT:  Do you have any basis to believe

14:56:47 21   that the Oracle Database compares a result to a set limit?

14:56:57 22             DR. DeBELLIS:  Yes.

14:56:57 23             THE COURT:  And then truncates it, or reformats

14:57:04 24   it?

14:57:05 25             DR. DeBELLIS:  Yes, Your Honor.

14:57:06 1                  THE COURT:  What is your basis for saying that?

14:57:09 2                  DR. DeBELLIS:  Well, what I have is basically

14:57:12 3      reading from the language of their documentation, I reviewed

14:57:18 4      thousands -- I have limited access to information, and the

14:57:22 5      whole purpose of hoping for discovery was to conclude that

14:57:30 6      in analyzing, for example, claim 1 of the '100 patent --

14:57:34 7                  THE COURT:  I'm still on the '720 patent.  I

14:57:38 8      can't just jump to that and say you're good to go.  I'm

14:57:42 9      starting with the '720 patent.  You still want to assert

14:57:46 10     that patent, right?

14:57:48 11                 DR. DeBELLIS:  Yes.

14:57:48 12                 THE COURT:  They have moved to dismiss it.  They

14:57:51 13     say there is -- for the apparatus claim, claim 31, you don't

14:57:55 14     even try to assert that one of the elements is present.

14:57:59 15     There is a big old blank in the chart.  There is.  So I

14:58:06 16     don't see how -- it shouldn't -- that claim shouldn't be

14:58:11 17     dismissed.  The question is, is it possible for you to say

14:58:18 18     anything that would support you and all you're telling me is

14:58:26 19     yeah, there are some documents, but that's not -- that

14:58:30 20     doesn't -- and you want discovery, but in order for you to

14:58:35 21     go forward, you should have a good faith basis to believe

14:58:40 22     that they're infringing.

14:58:44 23                 DR. DeBELLIS:  Yes.  Yes, Your Honor.  So on

14:59:36 24     page 11 of the example shows truncation of a variety of

14:59:49 25     numerical information, the 59 from 269 was truncated --

14:59:55  1          THE COURT:  I'm sorry, I don't see -- what page

14:59:59  2   are you talking about?

15:00:00  3          DR. DeBELLIS:  Page 11 of the --

15:00:02  4          THE COURT:  Of what exhibit?

15:00:03  5          MR. RAMEY:  Your Honor, page 11 of the First

15:00:06  6   Amended Complaint.

15:00:33  7          THE COURT:  And so where is the -- that's

15:00:46  8   truncating -- that's truncating the digits on the result.

15:00:53  9   Where are you talking about truncating the number of -- if

15:01:05 10   the quantity exceeds a specified amount, truncating the

15:01:11 11   data.  Where is the steps number?

15:01:40 12          DR. DeBELLIS:  In this case there is no evidence

15:01:42 13   of that in this particular example.

15:02:02 14          THE COURT:  Okay.  How about for claim 1, I

15:02:21 15   guess that's the same issue, that's Exhibit B, so that is

15:02:28 16   claim 1 that you just pointed me to.  So I guess my question

15:02:33 17   is, it seems like I need to dismiss these counts.  The

15:02:38 18   question is whether I do so with prejudice or not, meaning

15:02:42 19   that you can't then bring them again.

15:02:44 20          DR. DeBELLIS:  Yes, Your Honor.

15:02:45 21          THE COURT:  So if I were to give you an

15:02:47 22   opportunity, what is it that you would point me to that

15:02:50 23   shows you are meeting the element of the claim?

15:02:59 24          DR. DeBELLIS:  Well, I would delve to find a

15:03:04 25   better example, Your Honor, where the number of examples was

15:03:07  1    truncated, not just the numerical values.  The value of

15:03:16  2    truncation --

15:03:17  3            THE COURT:  It's not just truncating, though,

15:03:20  4    it's that there is a set number beforehand.  Right?  It's

15:03:24  5    not just that you get something and it's like I don't feel

15:03:28  6    like looking at all those numbers after the period.  It's

15:03:31  7    that there is a set number.  And so my question is, you had

15:03:34  8    a number of opportunities already to identify the specified

15:03:41  9    amount.  What is it that makes you think that you could do

15:03:45 10    so now?

15:03:47 11            DR. DeBELLIS:  I think I would -- I guess the

15:04:00 12    best I can say, Your Honor, is I would make an effort to

15:04:05 13    find an example that limits the number.  The reduction is

15:04:08 14    for -- the purpose of the truncation is to display all the

15:04:12 15    possible scenarios, all the possible results in a compressed

15:04:16 16    manner.  In this particular example, it's not a good example

15:04:20 17    because the number of individuals has not reduced.  In other

15:04:25 18    words, if the limit was five, let's say the idea is these

15:04:29 19    absolute numbers would be reduced down by one digit or

15:04:33 20    possibly two digits to allow the full spectrum of

15:04:37 21    understanding, and the idea that the alphanumeric spectrum,

15:04:42 22    0 to 9, A through Z is able to be displayed, gives you a

15:04:47 23    perspective on the data.  This example does not.  That is

15:04:51 24    entirely my fault.  And I claim no excuses except for the

15:04:57 25    fact that again, I'm limited by my own two hands and

15:05:00  1    twenty-four hours in a day to put all of this together.  And

15:05:03  2    again, the lack of precision, the missing pages is no

15:05:06  3    intentional disrespect, Your Honor.

15:05:08  4             And I am at a loss as well because I'm quite

15:05:13  5    obviously nervous and I can't think clearly, but I would

15:05:17  6    make an effort to provide you with a better example.

15:05:26  7             THE COURT:  What about the assertion that with

15:05:30  8    respect to ATG, all of your support comes from the Visual

15:05:36  9    Builder and there are no allegations whatsoever that the

15:05:41 10    Visual Builder is used, must be used, is used, with ATG?

15:05:47 11             DR. DeBELLIS:  Well, I -- at a certain point I

15:05:52 12    started to look at focusing my case on the software as a

15:05:59 13    service and the idea that all of these products work

15:06:02 14    together in concert.  The idea that as an apparatus claim it

15:06:08 15    applies against the fact that Oracle designs the software,

15:06:13 16    houses it on servers and then provides that combined service

15:06:17 17    as OCI to its customers basically I feel makes it such that

15:06:27 18    pointing out which particular product does or doesn't, the

15:06:30 19    entire process itself included -- and with additional

15:06:33 20    discovery being able to look at the pseudo codes, being able

15:06:36 21    to look at what is more than just publicly available on the

15:06:39 22    internet --

15:06:41 23             THE COURT:  So based on what you know of the

15:06:43 24    product, does it do this or not?

15:06:45 25             DR. DeBELLIS:  Yes.

15:06:46  1          THE COURT:  So what is your evidence for saying

15:06:48  2   that the Visual Builder is used with the ATG?  You're

15:06:53  3   accusing the ATG product.  When you are asked to support

15:06:58  4   your allegation, you're referring to something different

15:07:01  5   that you don't even say is part of the ATG product or used

15:07:05  6   with the ATG product.  So what is your basis for that?

15:07:13  7          DR. DeBELLIS:  Well, it just was best belief

15:07:16  8   based upon the interpretation -- again, reading through the

15:07:22  9   documentation.

15:07:23 10          THE COURT:  So what documentation suggest that

15:07:27 11   your reference to the Visual Builder is relevant to the

15:07:35 12   accusation of infringement to the ATG?

15:07:38 13          DR. DeBELLIS:  The links and the sources that I

15:07:54 14   have in the material that I provided you with today does not

15:07:57 15   break down which products the references come from.

15:08:08 16          THE COURT:  All right.  So it doesn't seem that

15:08:10 17   there are -- I think you have even admitted that there are

15:08:15 18   no sufficient allegations with respect to the '720 patent

15:08:18 19   with respect to the Oracle Database or ATG.

15:08:22 20          DR. DeBELLIS:  Yes.

15:08:23 21          THE COURT:  So I will dismiss those.  We'll

15:08:27 22   discuss in a moment how I want to proceed.  But now we can

15:08:31 23   move to the '100 patent, searching on-the-fly.

15:08:44 24          So where is there anything with respect to claim

15:08:49 25   32 that -- I mean, it just says that you can use SQL that

15:08:58  1    let's you write programs that you can do dynamic searches

15:09:04  2    on, but where is there anything that says there is a search

15:09:11  3    on-the-fly report that's generated, anything like that?

15:09:14  4                DR. DeBELLIS:  If I may, Your Honor, reference

15:09:17  5    the materials I provided today.

15:09:19  6                THE COURT:  Okay.

15:09:27  7                DR. DeBELLIS:  If we look at page 15.

15:09:34  8                THE COURT:  Okay.

15:09:35  9                DR. DeBELLIS:  On the left we have the absolute,

15:09:39 10    the claims, and on the right we have material directly from

15:09:44 11    Oracle, from their -- I'm losing my -- basically what it is

15:09:54 12    is it's their documentation from their manuals that are

15:09:58 13    available online.  And on the left is a preamble, you have

15:10:01 14    an apparatus that generates a search, on-the-fly search

15:10:04 15    report and from Oracle it says, and I quote, "Oracle

15:10:07 16    Database's computer program generates a data report on

15:10:14 17    Oracle customer's computers."  And this is a software as a

15:10:18 18    service.

15:10:18 19                And the first limitation shows that a search

15:10:24 20    on-the-fly report generator receives a raw query from the

15:10:28 21    search on-the-fly search report.  A search report and report

15:10:31 22    templates are created.  If you look at the Oracle

15:10:35 23    information on the right, you'll see that a SQL statement

15:10:40 24    can change on-the-fly.  And that's using Dynamic SQL, which

15:10:44 25    allows for a dynamic query form.  And that's from their

15:10:52  1    database, Oracle Database release 21.

15:10:54  2          The second limitation talks about a query

15:10:59  3    tweaker.  The query tweaker is defined as a -- is defined as

15:11:06  4    performing transformations and corrections.  And from my

15:11:09  5    specifications --

15:11:10  6          THE COURT:  So just so I understand, this

15:11:12  7    page 16, that is from your patent?

15:11:16  8          DR. DeBELLIS:  I'm sorry?

15:11:17  9          THE COURT:  Page 16 of your slide.

15:11:18 10          DR. DeBELLIS:  Yeah, that's an example from my

15:11:21 11    patent showing what a commercial --

15:11:23 12          THE COURT:  That's your patent, that's not a

15:11:24 13    commercial embodiment from Oracle?

15:11:27 14          DR. DeBELLIS:  No, it's not, it's just an

15:11:29 15    example showing the way that the truncation works.

15:11:31 16          THE COURT:  Okay.  So --

15:11:41 17          DR. DeBELLIS:  So the first limitation, raw

15:11:44 18    queries and a search report and a template, when you look at

15:11:47 19    Oracle, they create SQL statements on-the-fly.

15:11:52 20          THE COURT:  It can.  You say it can.  Is there

15:11:54 21    any evidence that anyone does this?

15:12:00 22          DR. DeBELLIS:  From their documentation, they

15:12:04 23    advertise that their clients can do this both in their

15:12:08 24    purchased products and as well as on their servers with OCI,

15:12:15 25    the cloud, on the cloud as a service, software as a service.

15:12:20 1   And this is something that's generically available to their

15:12:24 2   customers.

15:12:25 3            Before there was static SQL which all the

15:12:28 4   characters had to be predefined.  They now offer Dynamic SQL

15:12:33 5   which allows the flexibility of creating no longer a static

15:12:38 6   search, but a dynamic search.

15:12:42 7            And --

15:12:43 8            THE COURT:  Where is the report generator?

15:12:45 9            DR. DeBELLIS:  So then the report generator, as

15:12:49 10  you move forward --

15:12:50 11            THE COURT:  I'm just looking at first

15:12:53 12  limitation, a search on-the-fly report generator that

15:12:57 13  receives raw queries.  Where do you allege the search

15:13:00 14  on-the-fly report generator?

15:13:05 15            DR. DeBELLIS:  Well, if you look at the first

15:13:09 16  claim 1 of the '100 patent, page -- I have a reference to

15:13:20 17  report generator on page 5, this is the -- it's the same

15:13:29 18  language, but this is the first limitation is receiving a

15:13:33 19  query --

15:13:33 20            THE COURT:  I'm sorry, I thought we were talking

15:13:35 21  about the claim 32.

15:13:43 22            DR. DeBELLIS:  Yes, but --

15:13:44 23            THE COURT:  So why are you now sending me back

15:13:48 24  to a different claim?  Can we just figure out -- I'm trying

15:13:52 25  to figure out if you have asserted in non-conclusory or even

15:13:59  1    at all terms that the elements of claim 32 are met by the

15:14:07  2    Oracle Database.   And I see you're saying the Oracle

15:14:11  3    Database can use Dynamic SQL, the Dynamic SQL can do

15:14:18  4    on-the-fly searches, or can change on-the-fly at runtime,

15:14:24  5    but where are you asserting that there is a search

15:14:30  6    on-the-fly report generator that does what is claimed?

15:14:36  7             DR. DeBELLIS:  Well, the search on-the-fly

15:14:40  8    report generator receives raw queries and creates a report

15:14:45  9    template and that's what the Dynamic SQL allows them to

15:14:52  10   create a dynamic search --

15:14:52  11            THE COURT:  Where do you say that?  I'm just

15:14:52  12   looking at what you have for the first limitation.  I'm

15:14:55  13   looking at page 17 of your program.

15:14:58  14            DR. DeBELLIS:  Yes.

15:14:58  15            THE COURT:  Which is not in your complaint, but

15:15:00  16   I'm trying to figure out what you're going to allege.  So

15:15:04  17   where are you talking about this template?  I don't see --

15:15:08  18   what you're telling me right now, where is this alleged?

15:15:11  19            DR. DeBELLIS:  Well, I don't mention the

15:15:34  20   templates until page 20, Your Honor.  And this is from the

15:15:43  21   Oracle -- the sources on page 21, I believe, where it states

15:15:53  22   the source is -- basically from their report templates,

15:16:04  23   report column templates provides you with the control over

15:16:07  24   the results and a row from the SQL query, this type of

15:16:11  25   template defines a cell, not an entire row.

15:16:14 1          Basically these are quotes specifically from --

15:16:18 2 and in this particular case, I don't have the exact

15:16:20 3 reference here, but this is from their documentation

15:16:23 4 defining how you create a report template using the Oracle

15:16:33 5 Cloud software as a service.

15:16:36 6          And they define views and they define group

15:16:43 7 by's.  And in the definition, the query tweaker, which is

15:16:46 8 the second limitation, we talk about transformations and

15:16:50 9 corrections.  And in my specifications, I define

15:16:53 10 transformations and corrections as joined and grouped by's

15:16:58 11 in the database, Oracle Database.

15:17:01 12          THE COURT:  Is this in your complaint, in your

15:17:04 13 Amended Complaint or is this something new?  It doesn't

15:17:06 14 matter what you have in here.  This isn't what's the subject

15:17:10 15 of the motion.  Is this new stuff you came up with, or is

15:17:13 16 this in your Amended Complaint?

15:17:15 17          DR. DeBELLIS:  This is an example --

15:17:18 18          THE COURT:  Is it in your Amended Complaint?

15:17:20 19 You can't just say stuff -- I have to go by what's in your

15:17:25 20 complaint, so if this is all new, maybe that tells me that I

15:17:29 21 should let you try and amend again, but you can't use this

15:17:33 22 new stuff to save your complaint that doesn't have it.  This

15:17:39 23 is not a pleading, this is just a presentation.  So I need

15:17:43 24 to understand, is this new, or is this what -- are you

15:17:47 25 taking this out of your complaint?

15:17:51  1            DR. DeBELLIS:  Your Honor, I'm sorry to be

15:17:53  2    difficult.  When you say new, these --

15:17:56  3            THE COURT:  Is it in your complaint?  Is what

15:17:59  4    you're telling me here in your Amended Complaint?

15:18:02  5            DR. DeBELLIS:  Yes, I believe --

15:18:03  6            THE COURT:  Show me.  Don't use this, show me

15:18:06  7    using the complaint.  The complaint is what's important.  So

15:18:10  8    show me where you have alleged these things using the

15:18:14  9    Amended Complaint.

15:18:54 10            DR. DeBELLIS:  On page 15 of the Amended

15:19:00 11    Complaint, 34 says --

15:19:02 12            THE COURT:  Which exhibit, or just the complaint

15:19:04 13    itself?

15:19:05 14            DR. DeBELLIS:  Just the complaint itself.

15:19:07 15    Method, number 34, says method claim, see Exhibit F, an

15:19:11 16    apparatus claim each recite a query tweaker.  The

15:19:18 17    specifications of the '100 discloses that the query tweaker

15:19:22 18    receives a raw query and performs special transformations

15:19:24 19    and corrections including joint operations based on the

15:19:25 20    database scheme applying filters and plug ins and applying

15:19:29 21    group by clauses.  Oracle Database discloses Oracle Database

15:19:34 22    includes joins, filters, plug ins and group by clauses to

15:19:38 23    perform transformations and corrections on the received

15:19:41 24    query.

15:19:45 25            Method claim 1 exhibit F, an apparatus claim 32

15:19:50  1   each recite a report template.  Oracle discloses use of

15:19:54  2   report templates.  Oracle discloses a wide variety of report

15:19:59  3   templates, for example, Oracle discloses name column

15:20:02  4   templates.

15:20:04  5            Upon information and belief --

15:20:08  6            THE COURT:  Hold on.  Hold on.

15:20:10  7            DR. DeBELLIS:  Sorry.

15:20:21  8            THE COURT:  So where is the on-the-fly?  You say

15:20:26  9   Oracle discloses a variety of report templates, for example,

15:20:32 10   name column templates.  Where is the reference to the

15:20:36 11   on-the-fly aspect and the on-the-fly generator report?

15:20:53 12            DR. DeBELLIS:  In the Amended Complaint, you're

15:21:01 13   saying?

15:21:02 14            THE COURT:  That's the only thing that really

15:21:04 15   matters.

15:21:08 16            DR. DeBELLIS:  Yeah, I don't -- I didn't find

15:21:11 17   that reference to on-the-fly in quotations, only after the

15:21:18 18   initial Amended Complaint, Your Honor.  So if you're asking

15:21:22 19   me -- the reference in the materials I provided today of

15:21:26 20   on-the-fly within their documentation I found subsequent to

15:21:30 21   the Amended Complaint.

15:21:42 22            THE COURT:  Okay.  Anything else you want to

15:21:58 23   say?

15:22:00 24            DR. DeBELLIS:  Again, I do apologize.  I had

15:22:04 25   gone through claim 1 coming up with very specific points

15:22:10 1    where it essentially reads exactly on everything that the

15:22:17 2    claims are made from their documentation, but it's all in

15:22:20 3    that supplement, it's not in the original complaint.  So

15:22:26 4    that's problematic, I realize.

15:22:29 5                THE COURT:  All right.

15:22:30 6                DR. DeBELLIS:  I thought I could provide this as

15:22:32 7    additional support information.

15:22:34 8                THE COURT:  That's not the way it works.

15:22:37 9                DR. DeBELLIS:  Okay.

15:22:50 10                THE COURT:  All right.  So, Mr. Bobrow, let's

15:22:54 11    say that I am inclined to dismiss because I don't think that

15:22:59 12    there are sufficient allegations here that are not

15:23:04 13    conclusory that show that these products -- that allege that

15:23:10 14    these products infringe.  Why should I dismiss with

15:23:17 15    prejudice as opposed to giving him one more opportunity?

15:23:24 16                MR. BOBROW:  Your Honor, respectfully, this case

15:23:28 17    began nearly two years ago.  It began with a filing of a

15:23:33 18    complaint in the District Court in Texas which was

15:23:37 19    subsequently transferred here.  We moved to dismiss.  The

15:23:41 20    Court provided guidance on what needed to be done and

15:23:44 21    virtually nothing was changed from one complaint to the

15:23:47 22    next.

15:23:47 23                At the time the complaint was first filed, Vilox

15:23:51 24    was represented by counsel.  They filed the complaint in

15:23:55 25    Texas.  Mr. DeBellis is now proceeding pro se, but in the

15:24:00  1  course of the case that's a more or less new development.  I

15:24:03  2  mean, the beginning of the case, counsel was hired, counsel

15:24:06  3  had a Rule 11 obligation, counsel went ahead and filed these

15:24:10  4  claims.

15:24:10  5       We submit that having failed in the Amended

15:24:14  6  Complaint after all of this time to provide any suggestion

15:24:18  7  that Oracle does this, that he's had more than enough time

15:24:24  8  and it should be dismissed with prejudice.

15:24:29  9       THE COURT:  All right.  So I am going to grant

15:24:36 10  the motion.  Let me ask you this.  You have that other case

15:24:41 11  out there.  Why are we not consolidating these cases?  Why

15:24:44 12  do I have two different cases that I have to figure out?

15:24:48 13       MR. BOBROW:  I don't know why they have not been

15:24:49 14  consolidated, Your Honor.  I don't think a motion to

15:24:51 15  consolidate has been made, but they do stand I guess as two

15:24:55 16  cases, our DJ case with our breach claim and then this case.

15:24:59 17       THE COURT:  Any objection to those cases being

15:25:01 18  consolidated?

15:25:04 19       MR. RAMEY:  None from Vilox Technologies, Your

15:25:07 20  Honor.  If I could add a little color.  I think there is an

15:25:12 21  explanation that was probably set a little over a year ago.

15:25:16 22  We do, in fact, have local counsel, Mr. Forsten from Saul

15:25:20 23  Ewing, but he assumed this case would disappear and we would

15:25:23 24  all be on that case, that's why we didn't have him enter an

15:25:27 25  appearance here.  I asked to, but that was the kind of the

15:25:32 1    assumption we all were playing with I think thirteen months

15:25:35 2    ago.

15:25:37 3        THE COURT:  Okay.  Do you have any objection to

15:25:41 4    these things being consolidated?

15:25:43 5        MR. BOBROW:  No, Your Honor.

15:25:44 6        THE COURT:  Mr. DeBellis, do you have any

15:25:47 7    objection to the cases being consolidated?

15:25:49 8        DR. DeBELLIS:  No, Your Honor.

15:25:50 9        THE COURT:  So we'll consolidate those just so

15:25:52 10   it's easier as we go forward.  As I said, I'm going to grant

15:25:57 11   the motion to dismiss.  I will give -- given that the

15:26:01 12   plaintiff is proceeding pro se, I will give him one more

15:26:05 13   opportunity.  I will not, however, grant just leave to

15:26:11 14   amend.  I will let plaintiff try to amend using our

15:26:20 15   procedures for a motion to amend.  So if you have a new

15:26:25 16   complaint where you think -- you're going to get a

15:26:30 17   transcript, if you want one, and you're going to see all of

15:26:33 18   the complaints that Mr. Bobrow laid out as to what is not

15:26:37 19   correctly pleaded.  If you can correctly plead, then you

15:26:42 20   should go ahead and try it.  If you can't, then stick to

15:26:46 21   what you think you can plead.

15:26:51 22       So what I am going to do is you can come up with

15:26:56 23   a new complaint, you can show it to the other side, see if

15:27:00 24   they'll agree that it's appropriate to file.  If not, then

15:27:03 25   you need to follow our procedures which is you call, you get

15:27:07  1    a date for a hearing on a motion to amend and we will come

15:27:09  2    here and decide whether you can amend or whether it's

15:27:14  3    futile, in which case you would not be allowed to amend.

15:27:17  4              So I think that's the way we're going to

15:27:23  5    proceed.

15:27:25  6              MR. BOBROW:  Your Honor, I was wondering if

15:27:27  7    there was any sort of time frame or deadline by which this

15:27:31  8    should happen?

15:27:32  9              THE COURT:  How much time do you need,

15:27:34 10    Mr. DeBellis?

15:27:35 11              DR. DeBELLIS:  I don't -- what's the usual?

15:27:39 12              THE COURT:  I don't know how to answer that.

15:27:40 13              MR. RAMEY:  Your Honor, if I may.  May I?

15:28:10 14              Sorry, Your Honor.  We've agreed -- if the Court

15:28:14 15    would give us thirty days, we've agreed with the other side.

15:28:18 16              THE COURT:  Okay.  Thirty days.  Okay.

15:28:26 17    Thirty days to try to allege what's necessary.  Please take

15:28:33 18    into account the complaints that you've seen in the papers.

15:28:37 19    Where you're referring to documents from all over different

15:28:40 20    places, you need to be able to show that a particular

15:28:44 21    product does what you were saying that it does.  If it's a

15:28:48 22    method claim, you need to tell me who is using it, not just

15:28:52 23    that some database does something.  I don't know if that

15:28:55 24    means Oracle does it.  I don't know if that means a customer

15:28:58 25    does it.  It's unclear from your allegations.  So you need

15:29:01  1    to sit down and try and figure those out.

15:29:05  2              And then after we get that, if it's not agreed

15:29:10  3    that the allegations are sufficient, I'll allow limited

15:29:16  4    letter briefing.  You can tell me why you think it's futile,

15:29:21  5    you can tell me why you don't think it's futile, and then

15:29:24  6    we'll have a hearing and I will decide.  But this is your

15:29:27  7    last opportunity.

15:29:28  8              DR. DeBELLIS:  Thank you, Your Honor.

15:29:29  9              THE COURT:  And if you want to proceed pro se,

15:29:32 10    you're going to have to step up your game and not come in

15:29:35 11    here completely unprepared because all that is going to

15:29:39 12    result in is your case getting dismissed.

15:29:41 13              DR. DeBELLIS:  Yes, Your Honor.

15:29:41 14              THE COURT:  Anything else we need to address

15:29:43 15    today?

15:29:43 16              MR. BOBROW:  Nothing from Oracle, Your Honor.

15:29:48 17              MR. RAMEY:  Just, I don't think there is any way

15:29:50 18    to limit my firm's involvement to just Vilox and defense of

15:29:54 19    the contract, but I was going to see, obviously the Court

15:29:58 20    had let us in the patent infringement action only for the

15:30:01 21    assignment and discovery which never occurred in the past

15:30:04 22    thirteen months, so I don't think there is any order that

15:30:09 23    would indicate the breach of contract.  I can't think of

15:30:12 24    anything from Vilox today.

15:30:14 25              THE COURT:  Tell me where we are on this whole

15:30:18  1    Dr. DeBellis is now pro se but you're not letting the other

15:30:22  2    entity out for the patent, but you haven't done anything on

15:30:25  3    that issue, so I don't know what we're doing with that.

15:30:30  4            Everyone doesn't have to be standing.  I'm not

15:30:33  5    sure if I made you stand or not, but you're welcome to sit.

15:30:36  6            MR. BOBROW:  Thank you.

15:30:36  7            MR. RAMEY:  I have been sitting too long, Your

15:30:40  8    Honor.

15:30:40  9            MR. BOBROW:  Your Honor, since we filed -- since

15:30:43 10    the Court gave leave to permit us to conduct the discovery,

15:30:47 11    a new complaint was filed, the Amended Complaint, and we

15:30:50 12    promptly moved to dismiss it.  We've now had a hearing where

15:30:53 13    the Court has ruled on dismissal.  Because of the status of

15:30:57 14    that pleading, we had not conducted yet the discovery

15:31:00 15    because if the complaint had been dismissed with prejudice,

15:31:03 16    essentially that sort of moots the whole thing.  So if the

15:31:06 17    Court is --

15:31:08 18            THE COURT:  I need this all to go at the same

15:31:10 19    time.  I need to you multitask here.  Maybe it would be that

15:31:15 20    we don't let them re-file, amend the complaint yet again,

15:31:18 21    but Mr. Ramey is just kind of hanging out here because

15:31:23 22    nobody is doing anything.  You're like well, maybe the

15:31:27 23    company is still here, and so I haven't let him out.  But it

15:31:35 24    seems unfair that he's tried to get out for over a year now

15:31:38 25    and you're just like, well, we're not going to bother to

15:31:42 1    figure out if we want to let the company out or not, so I

15:31:45 2    need you to move on that.

15:31:47 3          MR. BOBROW:  Will do.  We'll go ahead and serve

15:31:51 4    discovery.  Let me note that Dr. DeBellis -- Vilox is in the

15:31:56 5    case in part because of our breach claim as well.

15:31:59 6          THE COURT:  No, no, no, I realize that, and it

15:32:01 7    seems like they have counsel who is appearing for that on

15:32:06 8    the breach claim as the -- but I don't know that he's -- he

15:32:12 9    hasn't appeared in this case.  So I can't say that he's

15:32:16 10   representing anybody in connection with the patent issues.

15:32:19 11   He's not here.  These cases were only recently -- today

15:32:25 12   we're going to consolidate them, but it doesn't seem that he

15:32:30 13   is making an appearance or representing for the patent

15:32:35 14   matter.  What I need to know is do you object to Vilox being

15:32:41 15   dismissed out of the patent case?  Certainly I understand

15:32:46 16   you have claims against Vilox and they need to be

15:32:49 17   represented by counsel for the breach claim.  All I care

15:32:53 18   about right now is the patent claim.

15:32:54 19         MR. BOBROW:  With respect to your prior comment,

15:32:58 20   Your Honor, we will now, given what Your Honor has just

15:33:02 21   said, we will serve discovery and if that discovery points

15:33:06 22   to no connection between Vilox and the patents, then of

15:33:09 23   course we would have no objection.  If the discovery shows

15:33:12 24   otherwise, then yes, we would object.

15:33:14 25         THE COURT:  That makes sense to me.  Just it

15:33:16  1    would be helpful if you took the discovery so we can figure

15:33:19  2    out where we are.

15:33:20  3              MR. BOBROW:  Will do.

15:33:21  4              THE COURT:  All right.  Anything else?

15:33:23  5              MR. RAMEY:  Nothing from Vilox.  Thank you, Your

15:33:25  6    Honor.

15:33:25  7              MR. BOBROW:  Thank you, Your Honor.

15:33:25  8              THE COURT:  All right.  Thank you.

15:33:26  9              COURTROOM DEPUTY:  All rise.  Court is

15:33:29 10    adjourned.

        11              (Court adjourned at 3:33 p.m.)

        12

        13              I hereby certify the foregoing is a true and
               accurate transcript from my stenographic notes in the proceeding.
        14

        15                        /s/ Dale C. Hawkins
                                 Official Court Reporter
        16                        U.S. District Court

        17

        18

        19

        20

        21

        22

        23

        24

        25